# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 CR 20 - 2 | **DATE** | 5/17/2004 |
| **CASE TITLE** | | USA vs. MOHSIN AL ROBAIE | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]    ENTER MEMORANDUM OPINION AND ORDER: Defendant's motion to dismiss count one of the indictment [doc no. 20-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 18 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 30 |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | 04 CR 20 |
| HAIDER AL SELAMI, MOHSIN AL ) | |
| ROBAIE, SHAKIR AL SHAHIEN, ) | Judge Ronald A. Guzmán |
| and GREGORY RICHARDS ) | |
| ) | |

**DOCKETED**
MAY 1 8 2004

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant Mohsin Al Robaie's Motion to Dismiss Count One of the indictment as to Al Robaie on the grounds that the indictment is barred by the statute of limitations and entrapment. For the reasons that follow, Al Robaie's motion is denied.

## FACTS

The indictment alleges the following facts, which must be taken as true for the purposes of this motion to dismiss. *See United States v. Yaskas*, 166 F.3d 873, 880 (7th Cir. 1999). From about May 11, 1998 to about January 13, 1999, the defendants and others devised and participated in a scheme to defraud Budget Rent-A-Car System, Inc. ("Budget") through the staging of fraudulent automobile accidents. Budget's rental customers could purchase liability coverage, which would allow the customers to file a claim with Budget if a collision or personal injury occurred. If the Budget customer was at fault, the third party involved in the accident could file a claim with Budget for collision damage and/or personal injury. Budget self-insured its rental vehicles, but it engaged CNA Investigations ("CNA") to investigate, review, and manage certain claims made against

30

Budget. Property damage claims were handled by Budget and CNA in approximately thirty days, but the time in which personal injury claims were settled varied by the nature of the alleged injuries and the number of medical treatments necessary.

The leaders of the scheme alleged in the indictment were known as "chasers."[1] Pursuant to the scheme, the "chasers" allegedly recruited the defendants to participate in a staged accident; located the vehicles to be used in the accident; orchestrated the roles of the defendants within the accident; directed the filing of false police reports; directed the defendants to consult with a lawyer to pursue personal injury claims; directed the defendants to visit a medical clinic and seek medical treatment for nonexistent injuries; directed and supervised the filing of false insurance claims based on the accident; and concealed the scheme.

The indictment charges that the defendants allegedly schemed to stage an accident between defendant Gregory Richards and defendant Haider Al Selami. Defendants Al Robaie and Shakir Al Shahien were recruited to act as passengers in Al Selami's car, also known as "sleepers." As part of the scheme, Richards rented a van from Budget on May 9, 1998 and obtained a loss damage waiver/liability insurance coverage on the vehicle through Budget. The accident occurred on May 11, 1998. The same day, Al Selami and Richards filed a false accident report with the Chicago Police Department.

On May 12, 1998, the "chasers," along with Al Selami, Al Robaie, and Al Shahien, met with an attorney using the name James L. Kent and doing business as the Chicago Adjusting Company. Kent was in fact an undercover FBI agent who was working to gather evidence against persons engaged in insurance fraud through staged automobile accidents. During the May 12 meeting with

---

[1] The "chasers" are not named as defendants in the indictment.

2

Kent, Al Selami, Al Robaie, and Al Shahien gave Kent a copy of the May 11 police report and also signed forms purporting to retain Kent to pursue claims against Budget for injuries they allegedly suffered in the accident.

The indictment further alleges that as part of the scheme, Al Selami, Al Robaie, and Al Shahien then visited physicians and medical clinics to complain about injuries for the purpose of making personal injury claims against Budget. These three defendants then filed or caused to be filed bills for unnecessary medical services with Budget in the amount of $9,200, and property damage claims in the amount of $3,721.56. On about June 19, 1998 and August 27, 1998, Al Selami's own insurer, Valor Insurance Company ("Valor"), paid him five checks totaling $3,721.56 for the alleged property damage to his vehicle.

On January 13, 1999, a medical clinic that had provided medical care to Al Selami mailed copies of Al Selami's medical records to CNA for its use in evaluating Al Selami's pending personal injury claim. The indictment alleges that the defendants, for the purpose of executing the scheme to defraud Budget, and attempting to do so, knowingly caused the January 13, 1999 letter to be sent

by the United States Postal Service from the clinic to CNA, in violation of 18 U.S.C. §§ 1341[2] and 1342.[3]

## DISCUSSION

A motion to dismiss tests only the sufficiency of the indictment to charge the stated offense, "regardless of the strength or weakness of the government's case." *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988) (citing *United States v. Sampson*, 371 U.S. 75, 78-79 (1962)); *see also United States. v Yasak*, 884 F.2d 996, 1001 (7th Cir. 1989) ("A motion to dismiss is not intended to be a 'summary trial of the evidence.'") (citation omitted). On a motion to dismiss, all facts in the

---

[2] 18 U.S.C.A. § 1341 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, . . . or knowingly causes to be delivered by mail . . . according to the direction thereon, . . . shall be fined under this title or imprisoned not more than 20 years, or both. . . .

[3] 18 U.S.C. § 1342 provides:

> Whoever, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341 of this title or any other unlawful business, uses or assumes, or requests to be addressed by, any fictitious, false, or assumed title, name, or address or name other than his own proper name, or takes or receives from any post office or authorized depository of mail matter, any letter, postal card, package, or other mail matter addressed to any such fictitious, false, or assumed title, name, or address, or name other than his own proper name, shall be fined under this title or imprisoned not more than five years, or both.

4

indictment must be viewed in the light most favorable to the government. *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999).

An indictment is sufficient if it (1) "state[s] all of the elements of the crime charged"; (2) "adequately apprise[s] the defendant of the nature of the charges so that he may prepare a defense"; and (3) "allow[s] the defendant to plead the judgment as a bar to any future prosecutions for the same offense." *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000) (citing Fed. R. Crim. P. 7(c)(1)). The indictment need not "allege in detail the factual proof that will be relied on to support the charges." *Id.* at 306. This Court must review the indictment "on a practical basis" and as a whole, "rather than 'in a hypertechnical manner.'" *Id.* at 305 (citation omitted); *see also United States v. Brack*, 747 F.2d 1142, 1147 (7th Cir. 1984) ("In construing an indictment under the mail fraud statute, a broad rather than a technical standard should be used to determine the sufficiency of the allegation of fraud.").

A.     **Statute of Limitations**

Al Robaie argues that the indictment is barred by the applicable five-year statute of limitations.[4] Al Robaie acknowledges that the January 13, 1999 letter was sent within the limitations period, but he claims the indictment defectively charges him with causing the letter to be sent.

First, Al Robaie states that the scheme was completed either on May 12, 1998, when Al Robaie received his $300 payment from Kent, or by June 19, 1998 and August 27, 1998, when the final payment was made by Valor, Al Selami's own insurer. Al Robaie argues that the conspiracy

---

[4] "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282.

5

was then completed as to him because his economic interest had ceased. He maintains that any attempts by Kent to obtain money after those dates were on Kent's own behalf to recover the funds he had paid to the "sleepers" and "chaser," and as an FBI agent, Kent could not be a co-conspirator.

Whether or not the scheme was completed when Al Robaie says it was necessarily depends upon what the scheme was. *See United States v. Bach*, 172 F.3d 520, 521 (7th Cir. 1999). The indictment alleges a scheme to defraud Budget. This alleged scheme was not completed after Kent had advanced funds to Al Robaie or his co-defendants, nor was it completed when defendant Al Selami was paid by his own insurer, Valor. Moreover, even if the defendants had received a final payment from Budget, the target of the alleged scheme, continued use of the mail to send fraudulent information to the insurance company could nevertheless constitute mail fraud. *See United States v. Tadros*, 310 F.3d 999, 1006 (7th Cir. 2002). Viewing the allegations in the light most favorable to the government, the Court cannot conclude as a matter of law that Al Robaie was not part of a scheme to defraud Budget as of January 13, 1999, and that he did not cause the January 13, 1999 letter to be sent in furtherance of that scheme.

Second, Al Robaie argues that he did not cause the January 13, 1999 letter to be sent because he did not write the letter, did not receive the letter, was not mentioned in the letter, could not even read the letter, and the letter transmitted the records of defendant Al Selami, not Al Robaie. At the pretrial stage, it is not the function of the Court to weigh the strength or merits of the government's case, only the sufficiency of the indictment, and the indictment sufficiently alleges that Al Robaie was a co-schemer in causing the January 13, 1999 letter to be mailed. It does not matter whether Al Robaie personally caused the January 13, 1999 letter to be mailed, because he would be responsible for the mailing if he knowingly caused the letter to be sent or set in motion a scheme by which the

mailings were sent by a third party. *See Tadros*, 310 F.3d at 1007 n.4; *United States v. Read*, 658 F.2d 1225, 1240 (7th Cir. 1980). Furthermore, to be liable for mail fraud, the defendant "need not agree to the scheme. He need only associate himself with the criminal venture and participate in it." *Read*, 658 F.2d at 1240.

Finally, Al Robaie argues that the mailing was not foreseeable or sent in furtherance of the scheme due to an intervening event. He attaches to his motion correspondence and internal notes from Budget's claims department indicating that in the months preceding January 13, 1999, Kent closed down his office and/or was "incommunicado," and he was not pursuing Al Selami's claim. Al Robaie states that as a result, Kent abrogated reimbursement of Al Haider's claim. Al Robaie concludes that Kent's apparent resurrection of the claim was therefore not foreseeable or in furtherance of the alleged scheme.

Al Robaie's argument is not based on the sufficiency of the indictment but on factual issues that cannot be resolved on a motion to dismiss. Viewing the allegations in the indictment alone, it was certainly foreseeable that correspondence would issue related to the claim made against Budget. *See United States v. Walters*, 997 F.2d 1219, 1223 (7th Cir. 1993); *United States v. Ledesma*, 632 F.2d 670, 676 (7th Cir. 1980). Any actions by Kent which may or may not have delayed the claim would not make the continued pursuit of the claim unforeseeable as a matter of law. *See Walters*, 997 F.2d at 1222 (quoting *Schmuck v. United States*, 489 U.S. 705, 715 (1989)) ("'The relevant question . . . is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time.'") (alteration in original); *Ledesma*, 632 F.2d at 677 ("'A mailing in furtherance of the collection of proceeds from a fraudulent scheme is sufficient under the mail fraud statute.'") (citation omitted).

Al Robaie's reliance on *United States v. Maze*, 414 U.S. 395 (1974), is misplaced. In *Maze*, the mailings at issue increased the likelihood that the defendant would be apprehended and therefore were found not to be sent for the purpose of executing the fraudulent scheme. *Id.* at 403. In this case, however, the mailing directly related to a claim made against Budget, which was alleged to be the victim of the defendants' fraudulent scheme. In addition, it does not matter that the mailing apparently did not result in an actual payment made by the insurance company. *See Tadros*, 310 F.3d at 1006; *Bach*, 172 F.3d at 522.

Again, in a motion to dismiss, the Court does not weigh the strength of the government's case but only determines whether the indictment properly alleges the nature of the charge:

> The resolution of the question of whether the mailings alleged were in furtherance of the scheme must await trial 'unless it so convincingly appears on the face of the indictment that as a matter of law there need be no necessity for such delay.' . . . [A]n indictment setting out the mailings charged and alleging that they were in furtherance of the scheme should not be dismissed as insufficient on its face unless there is no conceivable evidence that the Government could produce at trial to substantiate its 'in furtherance' allegation.

*United States v. Castor*, 558 F.2d 379, 384-85 (7th Cir. 1977) (citations omitted).

Accordingly, Al Robaie's motion to dismiss the indictment as barred by the statute of limitations is denied.

### B. <u>Entrapment</u>

Al Robaie next argues that the indictment should be dismissed as a matter of law because he was entrapped. An entrapment defense "consists of two elements: (1) government inducement of the crime; and (2) a lack of predisposition on the part of the defendant to engage in criminal conduct." *United States v. Theodosopoulos*, 48 F.3d 1438, 1444 (7th Cir. 1995). Al Robaie claims

that because Kent paid money to the "chaser" who recruited Al Robaie, the "chaser" was an agent of the government. Al Robaie states that according to the indictment, the "chaser" orchestrated the role of the defendants and directed the filing of the false claim, and the government directly solicited the crime, going so far as to pay for the rental of the Budget truck used in the allegedly staged accident. Al Robaie argues he was thus derivatively entrapped.

Al Robaie's argument is unavailing. Even assuming Al Robaie can raise a colorable defense of entrapment, the question inherently involves resolution of numerous factual issues relating to intent, the defendant's character and reputation, the level of inducement aimed at the defendant, as well as the credibility of the parties involved, and therefore is "traditionally reserved for jury resolution.'" *Theodosopoulos*, 48 F.3d at 1445 (quoting *United States v. Johnson*, 32 F.3d 304, 307 (7th Cir. 1994)). This Court cannot determine from the face of the indictment whether Al Robaie was confronted with extraordinary inducement, *see Jacobson v. United States*, 503 U.S. 540, 550-54 (1992), or whether he had the predisposition to commit the charged offense, *see Theodosopoulos*, 48 F.3d at 1444. Therefore, the motion to dismiss on the basis of entrapment must be denied.

## CONCLUSION

For the foregoing reasons, Mohsin Al Robaie's Motion to Dismiss Count One of the indictment [doc. no. 20-1] is denied.

5/17/04

**SO ORDERED.**  **ENTERED:**

**HON. RONALD A. GUZMAN**
**United States Judge**

9